Pearson, J.
 

 On the 1st day of January 1841, the plaintiff purchased of one Sutton “the town lot, house, and furniture” in the town of Windsor, at the price of $8000, and to secure the payment thereof, executed three notes for $2666 each, falling due on the 1st of January 1843, ’3, ’4, and drawing interest from date, and on that day was let into possession. At the same time, Sutton, with the defendant as his surety, executed to the plaintiff a penal bond in the sum of $10,000. The condition, after reciting the contract, the execution of notes for the purchase money, and that the plaintiff was let into possession, but that the title was to be held by Sutton, as a further security for the purchase money;- is in these words :
 
 *100
 
 “ Now, if the said Nicholls, oran}' other person for him, shall well and truly pay the purchase money, and the said Sutton thereafter, upon being requested,shall refuse to execute a good and sufficient deed, with covenants of seizin and warranty, to the said Nicholls, his heirs and assignees, for the above mentioned property, then the obligation to be in full force,otherwise to be void.”
 

 The action was commenced in March 1848, and is fir a breach of this bond. The breach assigned is, that on the 8th of May 1843, the lot, house, and furniture were sold by the sheriff, under executions against Sutton, issuing upon sundry judgments, rendered against him, at August term 1842, of the County Court of Bertie ; by reason of which sale, the
 
 snjd
 
 Sutton was disabled, and so continued until his death, and his heirs and administrator have ever since been disabled and incapable to convey the property, according to the true intent and meaning of the bond. The declaration has several counts, setting out the breach in different ways.
 

 It, was admitted, that the sheriff sold the property and made a deed to the purchaser, who evicted the plaintiff in March 1845. In January and February 1841, the plaintiff made payments amounting to $6552 78. Sutton died in December 1S43, intestate and insolvent, leaving several infants his heirs. The value of the property at the time of the sale by the sheriff was $2500. It was also admitted, that the plaintiff had not tendered to pay the balance of the purchase money ; and in August 1841, he conveyed his interest in the lot, house, and furniture, in trust, to secure certain of his creditors, whose debts still remain unpaid.
 

 And it was agreed, that if his Honor was of opinion, that the action could not be maintained, a non-suit should be entered ; otherwise, judgment to be entered for the penally of the bond, to be discharged by the payment of $8060 25, if his Honor should be of the opinion, that the
 
 *101
 
 proper measure of damage was the amount which had been paid by the plaintiff, less the rent of the property, while the plaintiff was in possession, (from January 1st 1841 to 8th of May 1843, the date of the Sheriff’s sale ;) or of the sum of $207 80, with interest from the 8th of May 1843, if his Honor was of opinion, that the proper measure of damage was the difference between the value of the property at the time of the Sheriff’s sale and the balance of the purchase money remaining unpaid with interest; or of six pence, if his Honor was of opinion, that the plaintiff was only entitled to nominal damage.
 

 His Honor was of opinion, that the action could not be maintained. A non suit was entered, and the plaintifF appealed.
 

 Two questions are presented. Can a vendee, without making a tender of the balance of the purchase money, maintain an action upon a bond for title, on the ground, that by a sale of the property, it is put out of the power of the vendor to make the conveyance, at the time the vendee has a right to call for it?
 

 Lovelock
 
 v. Franklin, 55 C. L. R. 372;
 
 Bondel
 
 v.
 
 Parsons,
 
 10 Each. 359;
 
 Coke on
 
 Littleton, 221, and the other authorities cited by the plaintiff’s counsel,fully support the position for which he contends. In
 
 Lovelock
 
 v.
 
 Franklin,
 
 the defendant had put the plaintiff in possession of the house, at an annual rent, and had agreed to convey the absolute interest to him, at any time within seven years, on payment by him, at any time during the seven years, of the sum of $1406. The defendant, during the seven years, sold and conveyed the premises to a third person, and the action was brought before the expiration of the seven years and without a tender of the $1406.— The Court held, that the defendant had broken his contract by making the conveyance, and that the action could be maintained without a tender; for, as the defendant had put it out of his power to make the conveyance,
 
 *102
 
 a performance on the part of the plaintiff was dispensed with, and it would have been a *• vain and foolish” thing to make the tender.
 

 In that case, the action was brought before the expira» tion of the seven years ; and it was urged, that there was no breach, for the defendant might recapacitate himself to make the conveyance, by purchasing back the property, before the time ran out; but the Court held, that there was a breach, for the defendant had incapacitated himself at the very time, when he might be called on and should be ready.
 

 In this case, from the terms of the bond, we think that the plaintiff was at liberty to pay the money at any time and call for a title before his last note became due ; for the credit was given for his benefit, and he might waive it, and pay sooner and stop interest: and the defendant was to convey upon the payment of the purchase money, for which purpose, alone, the title was retained. This action was not brought until the last note fell due: and admitting that the defendant might have recapacitated himself by a repurchase before that time, it is sufficient to say, he failed to do so, and was incapacitated at a time when he “ might be called on and should be ready.”
 

 The defendant’s counsel, admitting the general principle, insisted that this case did not come within it, on three grounds: 1st. The plaintiff, before the Sheriff's sale, had conveyed all of his interest in the property to a trustee, who had a right to call for the title. The answer is: the legal interest of the plaintiff in this bond still continues. Whether he carries on this action for his own use or for the use of another, is beside the case. — • This Court must act upon legal rights and has no concern with equities.
 

 2nd. It does not appear that the plaintiff was able
 
 to
 
 pay the balance of the purchase money on the day it fell due, and it is to be inferred from his making an assign»
 
 *103
 
 raent to pay the debts, which are still unpaid, that he was not. So
 
 he first
 
 became incapacitated and has no right to complain that the defendant was
 
 afterwards
 
 equally unfortunate. This objection is fully met in the case of
 
 Lovelock
 
 v.
 
 Franklin.
 
 The plaintiff was
 
 xiotbound
 
 to pay until his last note fell due. The defendant was bound to convey sooner, if the money had been tendered : and as he was incapacitated from doing so, a performance on the part of the plaintiff is dispensed with, and the. enqui-ry, whether the plaintiff
 
 would have
 
 been able to pay the balance of the money, is precluded.
 

 3rd. The incapacity was not caused by the act of the defendant, but by the act of law. The sheriff's sale was in
 
 “invitum”
 
 on the defendant’s part. Several cases were cited, which show, that conditions not to assign or under-let leases, were not broken by an assignment under the bankrupt and insolvent laws. Those cases are all put upon a strict construction of the terms of the condition; and it is admitted by them, that if the terms of the condition are made broad enough to include assignments by force of the laws referred to, such an assignment would be a breach, although made by act of law, and in
 
 “invi-tum”
 
 In our case, the terms are broad enough. The defendant is to convey on payment of the purchase money. It makes no difference, so far as concerns the plaintiff, whether the inability is caused by a conveyance, made by the defendant or the sheriff, to pay his debts.
 

 The second question is, as to the measure of damage-
 

 We cannot yield our assent to the position assumed by the plaintiff, that he has a right in this action against one of the obligees, for a breach of a bond for title, to recover, as damages, the amount of the purchase money, which had been paid in the same way, as if the plaintiff had repudiated the contract and sued the vendor for money “had and received to his use.”
 

 
 *104
 
 In this action, the plafntiff does not repudiate the contract; but seeks to recover compensation in damage for its non performance ; and the question is, what damage has he suffered ? What sum will put him in as good a condition as if the contract had been performed ? In that event, he would have got property which is worth @2500, but he would have been forced
 
 to
 
 pay the balance of the purchase money and interest. He has nor. paid this latter amount, and his damage is, the difference between that sum and the value of the property; which, by the case agreed. is$207 SO, with interest from the Sth of May 1843. This gives the plaintiff his redress at law, by compensation in damages, which he has elected to pursue as his remedjo He had the right to file a bill in equity for a specific performance, and the decree would have been for a conveyance of the property, upon his paying the balance of the purchase money, with interest. He would not have been entitled to a decree for the amount of the purchase money, which he had paid ; and there is no principle, upon which he can recover it, in this action upon the bond.
 

 The only difference between his remedy at law and in equity upon the contract, is, that in the one count he gets the property by paying for it; in the other, he gets compensation in damages, which is the difference between the value of the property and the amount of the purchase money, remaining unpaid.
 

 Our attention was called to the fact, that in the action for a breach of a covenant of quiet enjoyment, the measure of damage is, the price paid for the land, which is taken, as between the parties, to be the true value ; and it was urged that @8000 should be taken as the value in this case, and not @2500, which is admitted to be the real value, at the time of the breach.
 

 The analogy does not sustain the position, for which it was invoked; because the rule of damage in that action is founded on peculiar reasons. The covenant of quiet
 
 *105
 
 enjoyment is a substitute for the old
 
 real
 
 warranty, the remedy upon which was by voucher, and if the deman-dant recovered, the tenant had judgment against the vouchee for other lands of equal value. This remedy could only be used in real actions, where the
 
 land
 
 was demanded. After the action of ejectment took the place of those actions, the Courts, to give effect to the warranty, were obliged to construe it into a covenant of quiet enjoyment; but allowed the new action to retain some of the peculiarities of the remedy for which it was substituted — among others, that of considering the price as the rule of damage in lieu of “other land of equal value.”
 
 Williams
 
 v.
 
 Beeman,
 
 2 Dev. 483.
 

 There is nothing peculiar in the present action ; and the general principle applies, that the plaintiff shall recover compensation for the injury which he has sustained.
 

 The judgment of the Court below must be reversed, and judgment be entered for the plaintiff for $10,000, to be discharged by the payment of the sum of $207 80, with interest from the 8th of May 1843, according to the case agreed.
 

 Pjsr Curiam' Judgment accordingly.