SMITH v. INGRAM.

(Filed March 25, 1902.)

1. WARRANTY—*Covenants*—*Real Estate*—*The Code, Sec. 1334.*

Where a deed contains a warranty to the grantee, but not to his assigns, such assignees can neither maintain an action on such covenant, nor defend under it against the grantor.

2. DEEDS—*Married Women*—*Privy Examination*—*Lex Loci Sitae*—*The Code, Sec. 1256.*

A deed executed by a married woman in another State, according to the laws of such State, for realty in this State, without privy examination of the wife, as required by The Code, Sec. 1256, is void.

3. ESTOPPEL—*Deeds.*

Estoppel by deed can not arise where the deed is void.

4. HUSBAND AND WIFE—*Married Women*—*Personal Liability.*

A married woman who disaffirms her deed to real property and it is declared void, is not personally liable for the purchase-money.

CLARK, J., dissenting.

ACTION by Christian Smith against H. C. Ingram and others, heard by Judge *A. L. Coble,* at September Term, 1901, of the Superior Court of MONTGOMERY County. From a judgment for the plaintiff, the defendants appealed.

*Mclver & Spence,* and *Douglas & Simms,* for the plaintiff.
*Adams & Jerome,* for the defendants.

FURCHES, C. J. On the 21st of January, 1878, the plaintiff was the owner of the land in controversy, lying and being in Montgomery County, North Carolina, containing 133 acres, which she agreed to sell to one Lindsay Hursey for $130. The plaintiff, Christian Smith, was at that time a married woman, being the wife of J. L. Smith, and has so re-

mained the wife of said J. L. Smith until since the commencement of this action; that in pursuance of said contract and agreement to sell, she and her said husband made and executed a deed sufficient in form to convey said land to said Hursey in fee simple with a covenant of warrany of title to said Hursey, but not to his heirs, *nor to his assigns;* that the said Hursey thereafter took possession of said land and claimed to hold the same under this deed from the plaintiff and her husband, J. L. Smith, and the defendants claim under and by *mesne* conveyances from the said Lindsay Hursey.

The plaintiff and her said husband were residents and citizens of the State of South Carolina at and before the date of said transaction, and the plaintiff is still a resident and citizen of said State.    That said deed was probated according to the laws of South Carolina, but not according to the laws of this State, in that no privy examination of the plaintiff was ever taken.

It was shown and admitted that under the laws of South Carolina at that time a married woman might sell and convey her own land by and with the consent of her husband, without privy examination.    And it is admitted and the deed shows that the husband joined the plaintiff in making and executing said deed.

This action was commenced on the 16th day of September, 1895, for possession of said land and for damages for the wrongful detention thereof; and defendants answer and deny the plaintiff's right to recover, admit they are in possession of said land, and plead the deed of the plaintiff and her said husband, of the 21st of January, 1878, to the said Lindsay Hursey, under whom they claim title, as an estoppel.    And defendants contend that by reason of this deed and the covenant of warranty therein contained, the plaintiff is estopped to claim title to said land, and that she can not maintain this action.    Defendants say that as the plaintiff could convey her

land under the laws of South Carolina, and as she was a resident and citizen of South Carolina, and as the contract of sale and deed to Hursey were made in South Carolina, it was a South Carolina contract and the deed conveyed the land to Hursey; or, if this is not true, that the warranty is a personal contract that the plaintiff was authorized to make by the laws of South Carolina, that it is binding upon her, and might be enforced there and will be enforced here; that this being so, the plaintiff is estopped and can not maintain this action.

But upon a careful examination of authorities we find that neither of the contentions of the defendants can be sustained.

Lord Coke says warranty is a covenant real, attached to the land, and runs with the estate, whereby the grantee, upon being ousted by title paramount, may vouch the grantor and compel him to render other lands of equal value. 2 Coke upon Littleton, Chap. 13, Sec. 697, *et seq.*

In *Southerland v. Stout,* 68 N. C., 446, the grantor conveyed to McQuenn with general warranty, "which warranty the plaintiff acquired as incident to the estate derived from him—a covenant which runs with the estate." Thus it appears that where there is a general warranty to the grantee, his heirs and *assigns,* it is attached to the *land and runs with the estate,* and the heirs or assignee may vouch. But it is a *covenant real* and extends no further than the *terms* of the *covenant* carries it. My Lord Coke, again says: "If a man doth warrant land to another without this word (heirs) his heirs shall not vouch; and regularly if he warrant land to a man and his heirs, without naming *assigns,* his assigns shall not vouch." 384b and 385b.

So it is seen that if the estate had passed to Hursey under the deed of plaintiff and her husband, the defendants who are the assigns of Hursey, would have no interest in it, and could not have vouched the plaintiff.

Warranties are now treated as personal covenants. This is

so under the Statute of Anne, the Revised Code, Chap. 43, Sec. 10, and Sec. 1334 of The Code, and was made so by these statutes and judicial construction, because real actions had been abolished and actions of ejectment had been substituted in their stead and there was no one to vouch. But the action of covenant can only be had where the party could have vouched under an action real. *Southerland v. Stout,* 68 N. C., 446; *Rickets v. Dickens,* 5 N. C., star page 343 (4 Am. Dec., 555). And when suits are brought on such covenant and the grantee had been evicted from the whole of the land, the measure of damage was the amount paid for the land. *Williams v. Beeman,* 13 N. C., 483, approved in *Markl ind v. Crump,* 18 N. C., 94; 27 Am. Dec., 230; *Nichols v. Freeman,* 33 N. C., 99, and many other cases. The defendants having no right to vouch if this had been an action real, they have no right to sue on the covenant, and no right to defend under it. They have no privity or connection with the warranty, which was to Hursey alone; they have no interest in it, and can take no benefit under it, even if Hursey could have done so.

And we now propose to show that this transaction was absolutely void and no estate passed to Hursey under the deed of the 21st of January, 1878, and that the plaintiff incurred no obligation that can be enforced in law or equity.

The general rule is that executory contracts are governed by the law of the jurisdiction where they are to be executed; and if they are repugnant to the established policy of that jurisdiction, they can not be enforced. An executory contract may be made in this State to be executed in New York, and it will be considered a New York contract and subject to the laws of that State. But if such executory contract is made here, and no place named as to where it shall be executed, it is presumed that it was to be executed here—a North Carolina contract. And this doctrine applies only to executory contracts, and not to property.

But there are well-known exceptions to that rule. There are contracts which are localized by the subject-matter of the contract, as this one is. All contracts and deeds for the sale and conveyance of land are local and belong to the jurisdiction where the land lies, and will not be enforced when they are in violation of the laws and settled policy of this State. In other words, such contracts and conveyances are made, by the law, contracts and conveyances of the State where the land is. The law of constructive jurisdiction, or contractual jurisdiction has never applied to contracts for, or conveyances of land. And when the plaintiff made this sale and conveyance to Hursey, she made it as a citizen of North Carolina, that is, she was as much subject to the laws of this State as if she had been living here, and made it here. Hursey was as much bound to take notice of the fact that she was a married woman, as if she had been living here. This doctrine is well stated in Story's Conflict of Laws (8th Ed.), Secs. 38 and 474, and note A; Wharton's Conflict of Laws, Secs. 278, 305, 331, and sustained by *Meroney v. B. and L. Association,* 116 N. C., 882 (47 Am. St. Rep., 841), and *Armstrong v. Best,* 112 N. C., 59; 25 L. R. A., 188; 34 Am. St. Rep., 473, and in The Kensington, U. S., decided January, 1902. But the direct question has been passed upon, and it seems to us settled, by this Court in *Jones v. Gerock,* 59 N. C., 190. It seems to us this question is settled, treating as we must, under the authorities cited and many others, and is a North Carolina transaction, unless we overrule the Statute (Code, Sec. 1256) and the many decisions of this State, with regard to the execution of deeds by married women, and that the defendants can take no benefit under the transaction of plaintiff with Hursey. In *Clayton v. Rose,* 87 N. C., 106, the Court uses this language: "In *Scott v. Battle,* 85 N. C., 184; 39 Am. Rep., 694, it is held that a feme covert's deed, not executed in the prescribed mode, is wholly inoperative. Abiding these de-

cisions, we do not propose to reopen the question." The case of *Scott v. Battle,* which has been cited with approval in more cases in all probability than any other case since it was filed in 1881, is so full and complete in support of this opinion that we can hardly undertake to quote from it without doing injustice to the learned Judge who wrote it. But it holds that, at common law, there was but one way by which a married woman could convey her land, and that was by fine and recovery. That our statute has provided another way, more simple and less expensive—by deed, in which the husband joins, and by privy examination of the wife. "But unless the terms prescribed in the statute are *strictly complied with,* she stands as at common law, and the deed is absolutely void." It is not claimed that this statute has been complied with or attempted to be complied with in this case, and it is, therefore, absolutely void. And it would seem "that the same reasoning must be a full answer to the defendant's demand upon the plaintiff for the restoration of the purchase-money, which she has received and used." And "in no case will the law imply a promise on her part, and everyone who deals with her is held to do so with a knowledge of her disability." The Court then disposes of the case of *Daniel v. Crumpler,* 75 N. C., 184, and in effect overrules it; and then proceeds to quote from *Askew v. Daniel,* 40 N. C., 321, as follows: "That a deed of a feme covert, until she is privily examined by the proper authorities, is *mere blank paper,* so utterly void that even if it contains a stipulation in her own behalf, she can not have the benefit thereof." In *Green v. Branton,* 16 N. C., 504, the Court says that a feme covert can be bound as to her land in only two ways; first, by her deed executed jointly with her husband with her privy examination thereto; and, secondly, by the judgment of a competent court, and if her deed is not executed as required by law, it is an absolute nullity, under *which no equity whatever can be set up.*"

Again the Court says: "Upon principle, too, it seems impossible to conceive that the law will ever permit that to be done indirectly which it forbids to be done directly, or that it will give its countenance to a doctrine which must subvert its whole theory in regard to the contracts of married women. To do so would be equivalent to saying that a feme covert, by express deed, without being privately examined thereto, can not convey or charge her lands, and yet, by a mere contract to sell and the acceptance of the purchase-money, create such a lien upon it as the *Courts of Equity* will enforce by a sale against her will."

In the case of *Towles v. Fisher,* 77 N. C., 437, the Court says: "No one can reasonably rely upon the contract of a married woman, or on a representation which at best is in the nature of a contract, and by which he must be presumed to know that she is not legally bound, and it is only in the case of a pure tort, altogether *disconnected with a contract that any estoppel against her can operate.*"

The case of *Wood v. Wheeler,* 111 N. C., 231, is a case in our own Court directly in point as to the invalidity of the deed from plaintiff to Hursey. The defendant in that case was a married woman and a resident and citizen of South Carolina. She made a mortgage to a citizen of North Carolina upon lands in North Carolina. The mortgage was executed in South Carolina, where she lived, and was probated according to the laws of that State, as this deed was, and this Court held that it was utterly void.

Having shown that this *deed is utterly void,* it can not be used as an estoppel; and, in addition to the authorities already cited, we cite the following from 11 A. & E. Ency. L. (2d Ed.), p. 393: "No question of estoppel by deed can arise where the instrument is absolutely void." And in note 1 to this text, it is shown that this is the law in England, Alabama, Arkansas, California, District of Columbia, Indiana, Ken-

tucky, Massachusetts, Minnesota, Missouri, *North Carolina,* Washington and Wisconsin. And *Miller v. Bumgardner,* 109 N. C., 412, is cited in this note, showing that this is the law in North Carolina. There, the deed of a married woman, properly executed by her and her husband except the fact that she had never been privily examined thereto, was offered as an estoppel, and this Court held that it was no estoppel against her. Again, on the same page of 11 A. & E. Ency. L., it is held: "Where the deed is void, the mere fact that it contains covenants of warranty will not make it operative by way of estoppel, for, to make a warranty binding, there must be some estate conveyed to which the warranty may be annexed."

"A deed void, as being given in contravention of a statute, works no estoppel. Thus, a married woman will not be estopped by a deed not executed in the mode provided by statute." But "if the feme covert retain, and have actually in hand the money paid her as the consideration for her imperfect and disaffirmed contract, her vendee would be permitted to recover the same at law, or if she had converted it into other property, so as to be traceable, he might pursue it in its new shape by a proceeding *in rem,* and subject it to the satisfaction of his demand. But if she has consumed it, as it is admitted the plaintiff has in this case, the party paying it is without remedy; and this because of the *policy* of the law, which forbids all dealings with femes covert, unless conducted in the manner prescribed by the statute, and which throws the risk in every such case upon the party that deals with her."

"We hold, therefore, that the plaintiff is not personally liable to a charge for the money paid her by (Hursey), nor is her land in controversy subject to a lien thereon."

It seems to us that the judgment of the Court below is fully sustained, and it is

Affirmed.

DOUGLAS, J., concurring.   I concur in the opinion of the
Court with reluctance, on account of the great and unmerited
hardship it inflicts upon so many individuals, but I am forced
to concur, because, in my opinion, it is the law.   We have no
implied warranties as to real estate, and as express warranty is
a covenant real running with the land, it can never arise when
the deed creating it is absolutely void.

If the warranty could operate at all, it could only be by
estopped *in pais.*   An estoppel may at times prevent a person
from denying the validity of an act, which he might lawfully
have done, but not an act which he could not do.   In other
words, an estoppel can never be used to evade the law by vali-
dating an act forbidden by law.

I have given to the law of married women, as laid down in
the opinions of this Court, the repeated assent of my deliber-
ate judgment, and can not now undertake to reverse a long
line of decisions on account of the exceptional hardships of an
individual case.

CLARK, J., dissenting.   In 1878 the plaintiff (now a feme
sole), being then a married woman, residing in South Caro-
lina, united with her husband in the conveyance of the land in
question, which has since become valuable, the town of Star
being built thereon.   She now seeks to recover the land.   The
deed was executed to one Hursey, his heirs and assigns, and
contains a covenant of warranty of title to said Hursey, who
has since conveyed by deed with warranty to these defendants
and others who have improved the property which was stated
on the argument to be now worth some $40,000.

The deed by plaintiff and husband recited the receipt of the
purchase-money, some $130, the payment of which is not de-
nied.   In South Carolina the wife was then, and is now, fully
empowered to make any contract with reference to her sepa-
rate estate, and the doctrine of estoppel applies to married

women. *Crenshaw v. Julian,* 26 S. C., 283; 4 Am. St. Rep., 719; *Rigbee v. Logan,* 45 S. C., 651. In that State a married woman can convey realty or make any contract, not only without privy examination, but without the joinder or assent of her husband. Rev. Stat. 1893, Secs. 101, 102, 108; Rev. Stat. 1873, Secs. 104, 105, 111, and Chap. C, Secs. 1, 2, 3, of same. The privy examination not having been taken according to the requirements of our statute, and the land lying in this State, the deed was improperly admitted to registration here, and as, until recently, the statute of limitation did not run against married women, the long undisturbed possession by her grantee and these defendants, did not ripen what was a just and honest title.

But while the deed was not legally registered here, the contract of conveyance and the contract of warranty of title were valid in South Carolina where made, and being valid there, are valid everywhere else. The personal contract is enforcible everywhere if valid where made. 11 A. & E. Ency. L., 402, 415 (2d Ed.); *Wood v. Wheeler,* 111 N. C., 231; *Taylor v. Sharp,* 108 N. C., 377.

We have express authority that a covenant of warranty by a married woman, which, good as a personal contract, because competent according to the law of the place of contract, is good and enforcible as a personal contract, though the deed was void as a conveyance in the State where the land lay. *Railroad v. Conklin,* 29 N. Y., 587; 11 A. & E. Ency. L., 402 (2d Ed.). In *Basford v. Pearson,* 89 Mass., 504, a deed was executed by a married woman residing in Massachusetts for land lying in New Hampshire. It was properly executed according to the laws of Massachusetts, but not according to the laws of New Hampshire. The Court held that the married woman was estopped by her covenant of warranty, and says: "The covenant may be good and valid and effectual against the party making it, if she is duly authorized to contract in

that manner, although the deed in which it is contained might not be sufficient under the laws of another State to convey the lands therein situate."

And such is the universally recognized law. A married woman is estopped by her covenant of warranty in all cases where she is competent to contract according to the law of the place of contract. Harris on Contracts of Married Women, page 267, Sec. 318; *Kolls v. DeLeyer*, 41 Barb., 208; *Richmond v. Tibbles*, 26 Iowa, 474.

In *Zimmerman v. Robinson*, 114 N. C., 39, Avery J., says: "The right, with the concurrence of her husband, to execute conveyances as if she were a feme sole has been held to empower her to create a lien upon her separate real estate (*Alexander v. Davis*, 102 N. C., 17; *Newhart v. Peters*, 80 N. C., 166), and if the Courts are to allow her deed to operate to any extent, as if she were not under coverture, it must be conceded that the power to convey carries with it, by implication as an incident, the liability to estoppel by the covenants usually contained in conveyances."

In *Armstrong v. Best*, 112 N. C., 59 (34 Am. St. Rep., 473), (25 L. R. A., 188), the married woman was domiciled in this State and made, while temporarily in Maryland, a contract valid there, but invalid here. It was held, when sued in this State, that *being resident* here, she would receive the protection of the disability imposed by our law, but the Court was careful to approve the general rule laid down in *Taylor v. Sharp*, 108 N. C., 377, that the "validity of a contract (of a married woman) is to be determined by the law of the place where the contract is made, and if valid there it is valid everywhere," and further cites with approval *Robertson v. Quenn*, 87 Tenn., 445; 3 L. R. A., 214; 10 Am. St. Rep., 690, which held that where a married woman domiciled in Kentucky made a contract valid there, recovery could be had thereon in Tennessee, though the same contract made by a

married woman domiciled in Tennessee would be void. That case is on all-fours with this.

Upon the authorities above cited from our own reports and the uniform decisions of other States, the *contract* made by the plaintiff in South Carolina having been valid there, is valid here. The *deed* of conveyance is invalid here, because forms requisite to authorize its registration here are lacking. But the *contract* of conveyance (not contract to convey) is valid, and when the plaintiff seeks to disregard it and take back the land, her valid contract that she "has conveyed" is a complete answer to her in a Court of Equity, and the defendants claiming under a deed from Hursey are privies thereto. Certainly when the plaintiff has made an admittedly valid contract that, in consideration of receipt of the purchase-money, she has conveyed to Hursey and has put him in possession, and has acquiesced in that possession since 1878, she can not be allowed by a Court of Equity to put him and his grantees out and recover by violating her valid *contract,* $40,000 worth of property, when she has stood by so many years and allowed others to build upon and add great value thereto. If the plaintiff had put Hursey into possession with a valid contract reciting she had conveyed and would warrant the title, and acknowledged receipt of the purchase-money, she could not, under the present system, combining law. and equity, recover possession because she had not executed a deed, and the defendants are in no worse condition because a defective deed was superadded.

This is not the case of such a contract made by a married woman domiciled here as to whom the *contract* would be invalid. Nor do the cases as to one purchasing with notice of our statutes of disability as to married women apply; for here the purchaser knew that the law of South Carolina rendered valid the conveyance and the contract contained in the deed. The conveyance became ineffectual in this State by

reason of our registration laws requiring proof of her assent by a privy examination, but, by all the authorities, the contract of conveyance being valid there when she seeks to recover the land in our Courts by reason of the defect in the deed, a Court of Equity will refuse her the possession of the land, in violation of her valid contract that she has conveyed it and received the purchase-money. The cases as to enforcing an executory contract of a married woman have no application. The deed is defective for the non-observance of the mode of proof of execution of the deed which is required by our statutes, and which governs the registration of titles to realty in our State, but the *contract* that she has conveyed and acknowledged receipt of the purchase-money is an executed contract, as is also the contract of warranty.

A second ground which also defeats the plaintiff's recovery is, that the execution of the contract, the receipt of the purchase-money, the putting Hursey in possession, and the standing by while defendants (in privity with Hursey) have held possession ever since 1878, and built upon and improved the property, constitute an estoppel *in pais* against this plaintiff who was competent to contract, and is estopped by matter *in pais* in South Carolina as fully as if she had remained a *feme sole,* or as if she were a man. (Even if domiciled in this State, a married woman is, by virtue of Chapter 617, Laws 1901, responsible for buildings put upon her own land by her consent.) When her conduct would be a complete estoppel upon her, had she sued in her own forum, she can not be relieved from that estoppel by suing in ours.

There is still a third defense: She contracted with Hursey by a perfectly valid and binding contract, that she would warrant and defend this title. Had she sued in South Carolina, that would be binding on her, and she can not shake off and vitiate such personal contract, which our authorities hold to be valid here when valid there, by suing in our Courts. To

this the technical objection is made that such contract being to Hursey, without the addition of the words, "heirs and assigns," it does not run with the land, and, therefore, the defendants do not take benefit under it. By the Statute of Anne, Revised Code, Chap. 43, now Section 1334 of The Code, warranties are now held personal covenants, and a warranty which would prevent the plaintiff from recovering the realty from Hursey would prevent her getting it back from these defendants who hold under him. This is not an action by the defendants against the plaintiff for breach of her contract with their grantor, but sued by her to recover the *rem,* the title of which she had warranted by a contract which she was competent to make, they set up that warranty to Hursey (under whom they hold) as a defense, being in privity with him, and entitled to the protection of such defenses as would have prevented a recovery against him, had he remained in possession.

"Covenants which run with the land lie for or against the assignee at common law, though not named. *Bally v. Wells,* 3 Wills, 25. * * * Covenants that do not run with the land may be assigned in equity to enforce them by action in the name of the covenantee to use of assignee. 1 Smith Leading Cases, 179 ; *Willard v. Tayloe,* 8 Wall., 571. * * * If this covenant had not passed with the estate in the land, the conveyance would operate as an equitable assignment of his (grantor's) interest in it and of his right to enforce it in his name to her." *Hager v. Buck,* 44 Vt., 290 ; 5 Am. Rep., 368.

"For a covenant which runs with the land, an action lies for or against the assignee at common law, although the assignee be not named in the covenant. Citing Cro. Eliz., 553 ; 1 Ro. Rep., 359 ; Cro. Car., 221." *Bally v. Wells,* 3 Wills., 25 (1769). To same effect, *Willard v. Tayloe, supra.*

In *Coleman v. Bresnahan,* 61 N. Y., 622, it is said :

"Equity for the purposes of justice repudiates the distinction between covenants which do and do not run with the land." In *Trustees v. Lynch,* 70 N. Y., 449; 26 Am. Rep., 615, it is said: "Whether it was a covenant running with the land or a collateral covenant, or a covenant in gross, or whether an action of law could be sustained upon it, *is not material as affecting the jurisdiction of a Court of Equity.*"

In *Wead v. Larkin,* 54 Ill., 489; 5 Am. Rep., at page 153, the Court says: "Our conclusion is that where the covenantee takes possession and conveys, the covenant of warranty in the deed to him will pass to his grantee." *Doty v. Railroad,* Tenn.; 48 L. R. A., 160, is a recent case where the subsequent grantee of the land was held liable on a covenant in the conveyance, though the covenant did not refer to "assigns." In *Miller v. Railroad,* 132 U. S., 691, it is held that where (as in this case) the habendum is to the grantee, his heirs and assigns, this is not restricted by a more limited warranty following, and the grantor and his heirs are estopped to set up an adverse claim against the grantee.

In the more or less distant past, there was a highly technical distinction, resting upon feudal reasons long since extinct, between covenants running with the land and not running with the land. As stated in several of the above cases, this distinction is not recognized by Courts of Equity, when to do so would work injustice. It certainly should not be allowed that effect (even if the defendants' case depended upon that one proposition) in a case like this, where the plaintiff was equally competent by the *lex loci contractus* to make a valid contract of conveyance, a valid contract of warranty and a valid deed, and where she received the purchase-money, put her grantee in possession, stood by for seventeen or eighteen years without objection, allowed the defendants to improve the property, and now when it has become worth probably $40,000, seeks to get it back with this enormously increased value, in spite of her enforcible contract to warrant the title.

SMITH *v.* INGRAM.

Had she sued in her own Courts, this would have been a valid defense, and when she comes into our Courts her *contract* made in South Carolina is equally valid against her here as in. South Carolina, though the deed proves invalid, because not executed with the formalities as to proof of execution required by our statute as a prerequisite to registration. The defense. is in equity, not at law, and a contrary result would be so unjust as to shock the moral sense.

It must also be noted that, though the deed is invalid because proof of its execution is not as required by our statute, the *contract* of the married woman, even if she had been resident in this State, is valid to affect either her real or personal estate (having been made with assent of her husband) by the very terms of our statute. Code, Sec. 1826.

If there is any precedent anywhere which can be construed to countenance the plaintiff's recovery, there is no better time to repudiate it than now. A precedent so mischievous and subversive of every element of natural justice should not be left standing, upon which to ask the judgment of a court which will work such an injustice. In the very recent case of *Thompson v. Taylor* (17 June, 1901), decided by the highest Court in New Jersey, 49 Atl., 544, that Court holds, reversing the Supreme Court of that State, that where a married woman, domiciled in New Jersey, executes a note to her husband, invalid in New Jersey, which is taken by her husband, with her acquiescence, to New York and there endorsed by him and delivered, this became a New York contract, and, such contract being valid in New York, the liability of the wife will be enforced in New Jersey. This case is much stronger than ours and is a full discussion by a very able Court, showing how completely the doctrine of the legal nonentity and legal incapacity of women is now discredited, even in those States whose laws still retain some trace of it.

Precedents, even when unbroken and admitted, are not to be

preferred or continued when they work a patent and unde-
niable wrong.

Upon the facts found, judgment should have been entered
for the defendants.